# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: March 4, 2022

```
*  *  *  *  *  *  *  *  *  *  *  *  *
JEFFREY E. OLSON,                    *        UNPUBLISHED
                                     *
            Petitioner,              *        No. 20-142V
                                     *
v.                                   *        Special Master Gowen
                                     *
SECRETARY OF HEALTH                  *        Ruling on the Record; Table Injury;
AND HUMAN SERVICES,                  *        Shoulder Injury Related to Vaccine
                                     *        Administration ("SIRVA").
            Respondent.              *
*  *  *  *  *  *  *  *  *  *  *  *  *
```

*Jerome A. Konkel,* Samster, Konel and Safran, Wauwatosa, WI, for petitioner.
*Claudia B. Ganges,* U.S. Dept. of Justice, Washington, D.C., for respondent.

## RULING ON ENTITLEMENT[1]

On February 10, 2020, Jeffrey E. Olson ("petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program.[2] Petitioner alleges that he suffered a Shoulder Injury Related to Vaccine Administration ("SIRVA") as a result of receiving a tetanus vaccination in his left arm on July 1, 2019. Petition (ECF No. 1).

On February 16, 2022, respondent filed an amended Rule 4(c) report stating, "Medical personnel at the Division of Injury Compensation Programs ("DICP"), Department of Health and Human Services, have reviewed the evidenced filed in this case, including petitioner's expert report. Based on this review, respondent advises that he will not continue to defend this case during further proceedings on entitlement before the Office of Special Masters, and requests a ruling on the record regarding petitioner's entitlement to compensation." Respondent's ("Resp.") Amended Report ("Rept.") (ECF No. 49).

---

[1] Pursuant to the E-Government Act of 2002, see 44 U.S.C. § 3501 note (2012), **because this opinion contains a reasoned explanation for the action in this case, I intend to post it on the website of the United States Court of Federal Claims.** The Court's website is at http://www.uscfc.uscourts.gov/aggregator/sources/7. Before the opinion is posted on the Court's website, each party has 14 days to file a motion requesting redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). An objecting party must provide the Court with a proposed redacted version of the opinion. *Id.* **If neither party files a motion for redaction within 14 days, the opinion will be posted on the Court's website without any changes.** *Id.*

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-10 to 34 (2012) (hereinafter "Vaccine Act" or "the Act"). Hereinafter, individual section references will be to 42 U.S.C. § 300aa of the Act.

Based on a review of the record as whole, including petitioner's medical records, affidavit and expert report, I find by preponderant evidence that petitioner is entitled to compensation.

## I.      Procedural History

Petitioner, *pro se,* filed his petition for compensation on February 10, 2020.  Petition.  He alleged that he sustained an injury to his left shoulder after receiving a tetanus-diphtheria-acellular pertussis ("Tdap") vaccination on July 1, 2019.  *Id.*  On September 17, 2020, attorney Mr. Jerome Konkel entered his appearance on behalf of petitioner.  Motion ("Mot.") to Substitute Attorney (ECF No. 29).

Petitioner filed supporting medical records, including the vaccine administration record on October 16, 2020.  ECF No. 36.

On May 17, 2021, respondent filed his Rule 4(c) report, recommending against compensation.  Resp. Rept. (ECF No. 41).  Specifically, respondent stated that petitioner had filed to establish that he suffered a Table SIRVA, mainly because he failed to demonstrate that "pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered."  *Id.* at 6.  Respondent argued that petitioner described that the pain from his left shoulder was radiating into his neck and left trapezius muscle.  *Id.* at 7.  Therefore, he was unable to show that the pain was limited to his left shoulder.  *Id.*

On June 2, 2021, I ordered petitioner to file an affidavit responding to respondent's Rule 4(c) report and to file an expert report.  Scheduling Order (ECF No. 42).  Petitioner filed an expert report from Marko Bodor, M.D.[3] on September 2, 2021 and an affidavit.  Pet. Ex. 3; Pet. Ex. 5. (ECF Nos. 44 & 45).  I ordered respondent to file a responsive expert report on September 30, 2021.  Order (Non-PDF), entered Sept. 30, 2021.

After three extensions of time, respondent filed an amended Rule 4(c) report on February 16, 2022.  Resp. Amended Rule 4(c) Rept.  Respondent stated that, "Medical personnel at the Division of Injury Compensation Programs ("DICP"), Department of Health and Human Services, have reviewed the evidenced filed in this case, including petitioner's expert report.  Based on this review, respondent advises that he will not continue to defend this case during further proceedings on entitlement before the Office of Special Masters, and requests a ruling on the record regarding petitioner's entitlement to compensation."  *Id.* at 1.  Respondent also stated

---

[3] Dr. Marko Bodor is a Doctor of Physical Medicine and Rehabilitation, with sub-specialties in pain management and sports management.  Pet. Ex. 4 (ECF No. 44).  He received his undergraduate degree from Harvard College in 1982 and received his medical degree from the University of Cincinnati Medical School in 1987.  *Id.* at 1.  Dr. Bodor is licensed in the state of California and he is board certified in neuromuscular and electrodiagnostic medicine.  *Id.* at 1. He previously held positions as an emergency physician and attending physiatrist from 1988 through 1994.  *Id.*  Since 1995, he has practiced as an interventional physiatrist in private practice.  *Id.* at 2.  Additionally, Dr. Bodor serves a voluntary assistant professor at the Department of Neurological Surgery at the University of California San Francisco.  *Id.* at 1.  Dr. Bodor continues to treat approximately thirty patients per day.  *Id.* at 2.  Additionally, Dr. Bodor has written and co-authored numerous peer-reviewed medical articles, including the article, *Vaccination related shoulder dysfunction,* which the respondent cited when proposing to add SIRVA to the Vaccine Injury Table.

that "petitioner has not met his burden of proof under the Vaccine Act, for the reasons set forth
in [the] initial Rule 4(c) report…However, in light of petitioner's expert report, respondent no
longer wishes to defend against petitioner's entitlement claim." *Id.* at 7.

As requested by respondent, this matter is now ripe for adjudication.

## II.   Evidence Submitted

### a.   Medical Records

On July 1, 2019, petitioner received a tetanus-diphtheria-acellular pertussis ("Tdap")
vaccine in his left shoulder.  Pet. Exhibit ("Ex.") 1.  On July 6, 2019, petitioner filled out a
Health Services Request form and asked that he be seen in the Health Services Unit ("HSU"),
explaining, "I received a tetanus shot Monday, July 1, 2019.  Since then I have been
experiencing increasing soreness and stiffness in that shoulder…is going up to my neck and
across my left back/shoulder area.  Range of motion of arm and neck are very limited due to
increasing pain and stiffness." *Id.* at 267.

Ten days later after his vaccination, petitioner presented to the HSU on July 11, 2019
complaining of left shoulder pain and neck pain.  *Id.* at 21-23.  Petitioner reported that he had
received a tetanus vaccine on July 1, 2019 and that "by Tuesday, 7/2/2019 he had pain radiating
from his left shoulder into his [left] neck and [left] trapezius muscle." *Id.* at 21.  Petitioner also
reported that he could "hardly turn his head to left," and that "It [was] hard to raise his [left] arm
overhead due to pain." *Id.*  Petitioner had been taking Tylenol and doing range of motion
exercises.  *Id.* The nurse informed petitioner that "extended pain and difficulty raising the left
arm can happen at times after an immunization.  Patient instructed to keep doing [range of
motion] to [left upper extremity] even though it is painful…to prevent frozen shoulder." *Id.* at
23.

Petitioner returned to the HSU on July 16, 2019.  Pet. Ex. 1 at 18.  He reported he had
been doing light range of motion exercises with his left arm and that his symptoms were
improving.  *Id.* at 19.  Petitioner also explained that he still had limited range of motion, but it
was improving.  *Id.*  A physical exam noted that petitioner had limited active motion in his left
shoulder.  *Id.* at 20.  On July 17, 2019, petitioner filled out a medication supply refill request
form.  Pet. Ex. 1 at 265.

Petitioner made a request on August 14, 2019 for another appointment at the HSU for left
shoulder pain that was not getting better.  *Id.* at 259.  Specifically, he asked about the medication
that was prescribed to him.  *Id.*  Petitioner had an appointment at the HSU on September 12,
2019.  *Id.* at 9.  Under "Subjective" for this appointment, petitioner reported that his average pain
was a 7 out of 10 and that "it starts in the left shoulder which radiates along the posterior neck
and through the right scapula 'dull pain.'" *Id.* at 10.  Additionally, petitioner reported that the
pain has improved over the last few months, but he was still unable to sleep on his left side.  *Id.*
Petitioner also explained that Tylenol managed his pain and muscle rub is effective for
improving his movement in his left shoulder.  *Id.*  An X-ray was ordered for his left shoulder and

ice bag prescription was renewed. *Id.* Petitioner declined a steroid injection at this appointment and a physical therapy evaluation was ordered. *Id.* at 9.

Petitioner had an x-ray on his left shoulder which showed mild degenerative changes. Pet. Ex. 1 at 66. No shoulder fracture, separation or dislocation was seen. *Id.*

On February 12, 2020, petitioner made another health service request. *Id.* at 201. Petitioner wrote, "I am still experiencing moderate to severe pain in my left shoulder, now with a 'pop' in my left elbow at times. Also, the diclofenac sodium ointment is not really as effective as it was at first." *Id.* He requested that he have an appointment in the HSU. *Id.* On March 3, 2020, petitioner submitted a medication refill request for Tylenol. *Id.* at 195. It was received and signed the same day by HSU staff. *Id.*

Petitioner had another appointment on April 20, 2020 for left shoulder pain. Pet. Ex. 1 at 9. It was recorded that petitioner's left shoulder pain had been present for several years. *Id.* A physical exam revealed that petitioner had pain with palpation on the anterior AC joint and his active abduction range of motion was limited due to pain. *Id.*

On June 9, 2020, petitioner submitted another health services request, stating, "I can no longer manage the pain in my [left] shoulder with Tylenol and ice….And I can no longer perform [range of motion] exercises because I do not have ice to alleviate the inflammation." Pet. Ex. 1 at 158. On June 27, 2020, petitioner filed another health services request, stating that, "The [range of motion] of my left shoulder/arm is now less than 40% of normal, due to the inability to exercise it properly. I am unable to properly exercise the shoulder/arm because unit staff have been continuously refusing to provide me the medical ice." *Id.* at 146. Petitioner also wrote that his pain was increasing in severity and it was at an 8 out of 10. *Id.*

On July 1, 2020, petitioner returned to the HSU for a follow-up for his left shoulder. Pet. Ex. 1 at 9. Petitioner reported that his shoulder pain was "chronic," and "has been getting worse since May." *Id.* Petitioner denied re-injuring his left arm and requested Celebrex for the pain. *Id.* A physical exam showed that petitioner's abduction of his left shoulder was limited to 50-60% of normal and that he was unable to reach behind his back. *Id.* The APNP also noted that petitioner had "slight weakness with supraspinatus test," and wrote that petitioner's findings were "not definitive for [a] rotator cuff injury." *Id.* Petitioner was prescribed Celebrex at this appointment. *Id.*

On August 19, 2020, petitioner filled out a medication refill form for Tylenol and diclofenac sodium topical ointment. Pet. Ex. 1 at 119. It was not until August 28, 2020 that petitioner had his first physical therapy evaluation. *Id.* at 60. Petitioner's evaluation of his left shoulder demonstrated that he had reduced range of motion in all directions. *Id.* at 61. For example, petitioner's left shoulder flexion was 88 degrees, while his right should flexion was 132 degrees. *Id.* Under "Assessment," the physical therapist noted that petitioner had "chronic left shoulder pain that reportedly began in July of last year." *Id.* The physical therapist recommended that petitioner could benefit from skilled physical therapy to decrease pain and improve range of motion. *Id.* Petitioner was to have physical therapy once a week for six weeks.

*Id.* at 62.  Petitioner had two physical therapy sessions on August 31, 2020 and September 8, 2020.  *Id.* at 59-60.

### b.  Petitioner's Affidavit

Petitioner submitted an affidavit on September 2, 2021.  Pet. Ex. 5.  Petitioner stated that immediately after receiving the Tdap vaccine he felt "intramuscular soreness," and he described it as a "dull pain."  *Id.* at ¶ 4.  Petitioner stated that he believed the pain was normal.  *Id.* The next day, petitioner stated that his left shoulder was much worse.  *Id.* at ¶ 5.  Petitioner explained that the pain the day following the vaccine was a "throbbing pain from deep inside of my left shoulder joint," and that he began to compensate for the pain.  *Id.*

Petitioner stated that he began to take Tylenol to relieve his shoulder pain.  *Id.* at ¶ 6.  He explained that in the morning of July 2, 2019, he could only lift his arm midway to a 45-degree angle to the floor and by the evening he could barely move his left shoulder.  *Id.* He stated that when he saw the nurse on July 11, 2019, he was instructed to perform range of motion exercises and alternate between heat and cold to his left shoulder.  *Id.* at ¶ 10.

Petitioner's stated that on April 20, 2020, he was seen for his left shoulder pain and the physical evaluation showed his abduction active range of motion "was limited due to pain."  *Id.* at ¶ 12.  He stated that he had physical therapy on August 28, 2020 and that he continued physical therapy through the fall of 2020.  *Id.* at ¶ 13.  Petitioner stated that, "The range of motion in my left shoulder is mostly back to where it was before the Tdap vaccination, however, I still have some difficulty lifting my left arm straight up."  *Id.*  Petitioner also explained that his pain is about a three or four out of ten and that "The pain in my left shoulder affects my daily life."  *Id.*

### c.  Petitioner's Expert Report

On September 2, 2021, petitioner filed an expert report by Dr. Marko Bodor.  Pet. Ex. 3.  Dr. Bodor opined that, "[petitioner's] chief complaint of left shoulder pain, stiffness, and decreased range of motion is consistent with SIRVA, as caused by the administration of the tetanus vaccine on July 1, 2019."  *Id.* at 3.

Dr. Bodor noted that, "The location of symptoms in the shoulder radiating along the posterior neck and scapula is not unusual for the shoulder disorders similar to SIRVA. Additionally, it is not unusual…that [petitioner] was "hunching" his shoulder due to pain and stiffness that he was experiencing.  There is no indication that the pain is from radiculopathy; there is no tingling or numbness or radiation of symptoms int the hand."  *Id.* at 2.

Dr. Bodor concluded that "It is also my opinion that [petitioner's] left shoulder injury fits the Vaccine Injury Table."  *Id.*  He wrote:

(i)     [Petitioner] had no history of pain, inflammation, or dysfunction of his left
        shoulder prior to intramuscular vaccine administration that would explain the

        alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection.

(ii)       His left shoulder pain occurred within 24 hours of vaccination, as indicated in the medical records.

(iii)     His pain was limited to the left shoulder in which the intramuscular vaccine was administered, albeit there was referral to the scapula, which is part of the shoulder, and to the posterior neck, also common with shoulder disorders.

(iv)     No other condition or abnormality, such as radiculopathy or significant shoulder arthritis is present that would explain his symptoms.  He did not have pain until his vaccination, and his injury was most likely caused by the vaccination.

*Id.* at 3.

### III.    Legal Standard

To receive compensation through the Program, petitioner must prove either (1) that he suffered a "Table Injury"—i.e., an injury listed on the Vaccine Injury Table—corresponding to a vaccine that he received, or (2) that he suffered an injury that was actually caused by a vaccination. See §§ 300aa-13(a)(1)(A), 11(c)(1); *Capizzano v. Sec'y of Health & Human Servs.,* 440 F.3d 1317, 1319-20 (Fed. Cir. 2006).

In this case, petitioner alleges that he suffered a Table Injury.  Thus, petitioner must show that he suffered an injury of the type enumerated in the "Vaccine Injury Table," corresponding to the vaccination in question, within an applicable time period following the vaccination also specified in the Table.  If so, the Table Injury is presumed to have been caused by the vaccination, and the petitioner is automatically entitled to compensation, unless it is affirmatively shown by the government that the injury was caused by some other factor other than the vaccination.  § 300aa-13(a)(1)(A); § 300aa-11(c)(1)(C)(i); §300aa-14(a); § 300aa-13(a)(1)(B).

SIRVA is an injury listed on the Vaccine Injury Table ("Table").  The QAI explains that, "SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm.  These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction.  SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g., tendons, ligaments, bursae, etc.)." 42 C.F.R. 100.3(c)(10).  The SIRVA criteria under the Qualifications and Aids to Interpretation are as follows:

A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) no history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain

the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*  The Tdap vaccine is a covered vaccine, and the Table specifies that for a Table SIRVA, onset must occur within 48 hours.  *Id.* at §100.3(a)(VIII).  In respondent's first Rule 4(c) report, respondent stated that, "There is not preponderant evidence demonstrating the requisite facts to establish compensation for petitioner's alleged left SIRVA, specifically the third QAI criterion." Resp. Rept. at 6.  Even though respondent's amended Rule 4(c) report stated that he "will not continue to defend this case during further proceedings on entitlement," respondent also stated that he "maintains that petitioner has not met his burden of proof under the Vaccine Act, for the reasons set forth in the his initial Rule 4(c) Report."

## IV.   Analysis

### a.   No history of pain, inflammation, or dysfunction of the affected shoulder.

There is no evidence of prior pain, inflammation, or dysfunction in petitioner's left shoulder prior to the receipt of the July 1, 2019 Tdap vaccination.  Further, respondent concedes that petitioner had no prior left shoulder issues in the amended Rule 4(c) report and stated, "…he had no pre-vaccination history of left arm problems."  Resp. Amended Rept. at 2.

Additionally, petitioner's expert, Dr. Bodor, who reviewed petitioner's medical records also noted that petitioner had no history of left shoulder issues.  Pet. Ex. 3 at 3.

Petitioner has established by preponderant evidence that he had no history of pain, inflammation or dysfunction of his left shoulder.

### b.   Pain occurred within 24 hours.

Petitioner received the Tdap vaccination on July 2, 2019.  In his affidavit, petitioner stated that he immediately felt intramuscular soreness in his left arm and that the following day, July 2, 2019, his shoulder pain was much worse.  Pet. Ex. 5 at ¶5.  Additionally, in the medical records, he consistently attributed his left shoulder pain and dysfunction to his Tdap vaccination on July 1, 2019.  *See* Pet. Ex. 1 at 21-23, 60, and 267.  Further, respondent did not make a specific argument on this criterion.  As such, petitioner has established the onset of pain within 48 hours of receiving the July 1, 2019 Tdap vaccination.

### c.   Pain and reduced range of motion limited to petitioner's left shoulder.

Respondent argued that petitioner had complaints of pain radiating from his left shoulder into his neck and left trapezius muscle and that petitioner, "consistently described his pain as radiating to his neck, trapezius, and across his back on several occasions."  Resp. Rept. at 5-6. Respondent cited to petitioner's medical appointment on September 12, 2019 where petitioner reported that his pain "starts in the left shoulder which radiates along the posterior neck and through the right scapula," as evidence that the pain and reduced range of motion extended beyond his left shoulder.  *Id.* at 6.

However, the medical records demonstrate that petitioner's reduced range of motion is limited to his left upper extremity. At that same appointment respondent cited to, it was noted that petitioner's other extremities, including his right upper extremity, had normal range of motion and only his left shoulder had "decreased range of motion, tenderness during exam." Pet. Ex. 1 at 10. Petitioner did not complain about pain in his right upper extremity, only that the pain from his left shoulder was radiating from the left shoulder to the right side of his upper back and shoulders. All records indicated that his pain originated from and was focused in the left shoulder with pain radiating to the upper back and scapula. No records indicated pain radiating from the neck.

Significantly, Dr. Bodor explained, "The location of symptoms in the shoulder radiating along the posterior neck and scapula is not unusual for shoulder disorders similar to SIRVA."

Therefore, petitioner has established by preponderant evidence that the pain and reduced range of motion were limited to his left shoulder.

### d. No other condition or abnormality explains petitioner's symptoms.

Respondent does not make any specific argument regarding this criterion. Additionally, petitioner's expert, who reviewed petitioner's medical records stated, "No other condition or abnormality, such as radiculopathy or significant shoulder arthritis, is present that would explain [petitioner's] symptoms." Pet. Ex. 3 at 3. Finally, a review of the medical records shows that no other condition was present prior to the vaccination or afterwards that would explain petitioner's reduced range of motion and pain. As such, petitioner has established this criterion by preponderant evidence.

### e. Factors unrelated

Pursuant to the Vaccine Act, once petitioner has met his *prima facie* burden of demonstrating a Table Injury, respondent may still prove the condition is "due to factors unrelated to the administration of the vaccine described in the petition." §300aa-13(a)(1)(B). In this case, respondent does not make any argument regarding factors unrelated. Instead, respondent opted to no longer defend against petitioner's entitlement claim.

### V. Conclusion

For the reasons discussed above, including the medical records consistently describing pain in the left shoulder beginning with the vaccination, and importantly, Dr. Bodor's explanation that the location of symptoms in the shoulder radiating along the posterior neck and scapula is not unusual for the shoulder disorders similar to SIRVA, I find that petitioner has established by preponderant evidence that he suffered a SIRVA Table Injury following his July 1, 2019 Tdap vaccination as alleged. A separate damages order will be issued.

**IT IS SO ORDERED.**

<u>**s/Thomas L. Gowen**</u>

Thomas L. Gowen
Special Master